IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALLEN WAYNE HENDERSON, 1438735, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | No. 3:09-CV-1250-L |
| ) | |
| RICK THALER, ) | |
| Director TDCJ-CID, ) | |
|     Respondent. ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

Petitioner was charged with burglary of a habitation with intent to commit sexual assault. *State of Texas v. Allen Wayne Henderson*, No. 23,797 (354th Dist. Ct., Hunt County, Tex., Mar. 28, 2007). On March 28, 2007, the Court found Petitioner guilty of the lesser-included offense of sexual assault and sentenced him to thirty years confinement. On December 13, 2007, the Sixth District Court of Appeals affirmed the conviction. *Henderson v. State*, No. 06-07-00080-CR (Tex. App. – Texarkana, Dec. 13, 2007, pet. ref'd). On March 19, 2008, the Court of Criminal Appeals refused Petitioner's petition for discretionary review. PDR No. 0142-08.

On March 3, 2009, Petitioner filed a state petition for writ of habeas corpus. *Ex parte*

*Henderson*, Application No. 71,857-01. On April 29, 2009, the Court of Appeals denied the petition without written order. *Id*. at cover.

On June 22, 2009, Petitioner filed this federal petition. He argues:

(1) The evidence was insufficient to support the conviction;

(2) The state was biased and relied on perjured testimony;

(3) The state failed to disclose evidence favorable to the defense;

(4) He received ineffective assistance of counsel because counsel:

    (a) failed to present pertinent evidence and conduct an adequate investigation;

    (b) failed to consult with Petitioner;

    (c) failed to object to surprise witnesses;

    (d) failed to sufficiently cross-examine the state's witnesses;

    (e) failed to understand that Petitioner was not eligible for probation.

On October 19, 2009, Respondent filed his answer. On April 10, 2012, Petitioner filed additional briefing. On May 10, 2012, Respondent filed a response to the briefing. The Court now determines the petition should be denied.

## II. Factual Background

The following factual background is taken from the opinion of the Sixth District Court of Appeals.

> The two opposing sets of witnesses in the sexual assault trial of Allen Wayne Henderson agree on little. The few areas of agreement are that Henderson and his former girlfriend, Jean Ann Oxford, had a stormy relationship, that Henderson visited Oxford in her home before dawn on December 5, 2005, that during that visit at least Oxford's voice was raised, and that in the aftermath of that event both Henderson and Oxford had minor injuries. Oxford accused Henderson of sexually assaulting her that morning. Henderson's defense described Oxford as a spurned woman lying to exact her revenge.

\* \* \*

Oxford testified that she and Henderson had been in an intimate relationship which ended when they broke up the evening before this pre-dawn assault. She testified that Henderson woke her at 5:30 a.m., knocking on the door of her house and pushing past her when she answered the door. Oxford's narrative included Henderson barring her six-year-old son in the son's bedroom, hitting Oxford, stripping her naked, and forcing her to perform oral sex on him. After Henderson left, Oxford immediately took her son to her babysitter's house and called the police from that safe location to explain what had happened. She went to the police station a few hours later. A number of photographs were introduced, including pictures of bruising, and damage to her home that she claimed was caused during the course of the assault. She also testified that some of the injuries depicted in the photographs resulted from a fight with Henderson the evening of December 4.

Henderson's version of the events differed considerably. He testified that he went, with his new girlfriend in the car, to Oxford's house to collect his belongings. He testified that, even though he and Oxford broke up the night before, Oxford started "freaking out," yelling, screaming, and even biting him when he said he wanted all his clothes. He testified that, defending himself, he pulled her hair to get her away, and then took his bag out to the car. Henderson testified that he returned to get bed sheets that were there to be washed. He testified that he was too exhausted to have had sex with her that morning. Henderson could not otherwise account for Oxford's injuries.

Sarah McClintic, Henderson's new girlfriend, testified about Henderson's vacillation between the two women, about the breakup between Henderson and Oxford, and testified that she heard Oxford's raised voice from inside the house from the enclosed car where McClintic waited. She also testified that Henderson was inside the house only for two brief periods of about five minutes each – brief enough to seriously dispute Oxford's version of events.

Jamie Lynn Fagg, a friend of both Oxford ("best friends") and Henderson, testified that, after getting off work, she joined her ex-husband and Henderson around 2:30 a.m., December 5, fishing where Fagg lived. She testified that, after fishing with Fagg and her ex-husband for awhile but still before dawn, Henderson left. Later that morning, Henderson returned and entered Fagg's house, appearing upset, looking out the windows, saying he thought the cops were looking for him, and recounting that Oxford had threatened to call the law on him if he ever laid a hand on her again. Fagg testified that Henderson did not answer when she asked him what he had done to Oxford that morning.

Peggy Jones, Oxford's babysitter of many years, testified that Oxford appeared with her son at Jones' house around dawn December 5 showing extreme signs of emotional turmoil. Jones described Oxford as "very, very upset," wringing her hands,

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -3-

complaining she hurt all over, and rubbing her hands over her body. Jones testified she had never seen Oxford that upset in the years she had provided child care for her son. She added that Oxford called the police using Jones' telephone.

Preston Boles testified that Henderson was working for him as a roofing contractor during 2005, and that he normally met Henderson and other workers around 7:00 a.m. at a convenience store to prepare for work; if they were not there at that time, they did not work. Counsel introduced several paychecks from Boles to Henderson, which from their amounts indicated that he had worked every day during that time period, because Boles paid workers by the day. Boles did not independently remember the morning of December 5, but assumed from the paycheck amounts that Henderson was there and worked that day.

*Henderson v. State*, No. 06-07-00080-CR, slip op. at 1-4.

### III. Discussion

### 1. Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently

from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

**2. Sufficiency of the Evidence**

Petitioner argues the evidence was insufficient to convict him of sexual assault. Federal habeas review of an insufficiency of the evidence claim is extremely limited. A federal court may not disturb a conviction in a state criminal proceeding unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 443 U.S. 319; *Gibson*, 947 F.2d at 781.

Under Texas law, a defendant commits sexual assault if the defendant intentionally or knowingly causes the penetration of the mouth of another person by any means, without that person's consent, with the sexual organ of the defendant. TEX. PENAL CODE Ann. § 22.011(a)(1)(B) (2005). A sexual assault is without the consent of the other person if the defendant compels the other person to submit or participate by the use of physical force or violence. *Id*. at 22.01(b)(1).

In this case, the complainant Jean Ann Oxford testified that Petitioner push his way into her house when she answered the door, and he refused to leave. (Trial Tr. Vol. 5 at 28-29.) She stated he told her she was going to "finish her job," which she understood to mean that she must

perform oral sex on Petitioner. (*Id*. at 29.) When she refused, Petitioner pulled her around the house, pulled her hair out and pulled her clothes off. (*Id*. at 31.) She testified Petitioner held her hair and used his other hand to put his thumb in her eye. (*Id*. at 32.) He told her if she did not perform oral sex on him, he would poke her eye out. Id. She then complied and performed oral sex on him. (*Id*. at 32-33.) Photographs of Oxford's injuries were admitted at trial.

Complainant Oxford's babysitter, Peggy Jones, testified that Oxford came to her house early on the morning of the assault and that Oxford was very upset. (Trial Tr. Vol. 6 at 84.) Jones testified Oxford was crying and saying that she was hurting all over. (*Id*. at 85.) Jones stated that Oxford called the police from her house. (*Id.* at 90.)

Oxford's and Petitioner's friend, Jamie Fagg, testified that Petitioner came to her house early on the morning of the assault. (Trial Tr. Vol 6 at 63.) She stated Petitioner seemed nervous and that he stated he was afraid the police were looking for him. (*Id.* at 65.) Petitioner told Fagg that Oxford had told him she would call the police on him if he ever laid a hand on her again. Fagg asked Petitioner what he did to Oxford, but Petitioner did not tell her. (*Id*.)

Petitioner and his girlfriend, Sarah McClintic, disputed the testimony of Oxford and Fagg. Petitioner stated he did not go to Fagg's house the morning of the assault. McClintic testified she was in the car when Petitioner went to Oxford's house to retrieve his belongings, and that Petitioner was not in the house long enough to commit the sexual assault.

Viewing this evidence in the light most favorable to the verdict, the Court finds there was sufficient evidence to support the conviction for sexual assault. This claim should be denied.

**3.     Perjured Testimony and Bias**

Petitioner argues his conviction is unlawful because the state relied on perjured testimony

and called surprise witnesses. He states complainant Oxford offered perjured testimony of the assault and of her fear of Petitioner and that her letters to Petitioner would show she is vindictive. He states witness Fagg had been taking drugs on the day of the assault. Petitioner, however, has failed to show that Oxford's testimony was perjury. Her letters to Petitioner were also admitted at trial. Fagg also admitted on the witness stand that if she were tested for drugs that day, she would test positive for marijuana. (Trial Tr. Vol. 6 at 78.) This evidence was introduced at trial, and the court determined the credibility of the witnesses.

Petitioner also argues the state was biased against him. He states the District Attorney was on the Board of "Women in Need," which should be a conflict of interest. He states the prosecutor was rude to his girlfriend Sarah and tried to show she was a biased witness. The prosecutor, however, does not act as an impartial judge. If the prosecutor believes a witness is biased, the prosecutor is entitled to expose that bias to the trier-of-fact. Petitioner's claim should be denied.

**4.     Exculpatory Evidence**

Petitioner argues the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He states DNA testing and lab reports, 911 calls, interviews with any neighbors, testimony from complainant's son and other witnesses were withheld from the defense.

To establish a *Brady* claim, Petitioner must show that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence. *Brady*, 373 U.S. at 87. Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant. *United States v.*

*Freeman*, 164 F.3d 243, 248 (5th Cir. 1999). *Brady,* however, "does not obligate the State to furnish a defendant with evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997); *see also, In re Smith*, 142 F.3d 832, 836 (5th Cir. 1998) (finding that if defendant, using reasonable diligence, could have obtained the information, no claim arises under *Brady*); *United States v. Aubin*, 87 F.3d 141, 148-49 (5th Cir. 1996) (finding that due diligence on the part of the defendant is a necessary element in a successful *Brady* claim).

In this case, Petitioner has failed to identify any exculpatory evidence that was withheld from the defense. He has identified no DNA testing, lab reports or 911 recordings that existed, were exculpatory, and were not produced. Further, Petitioner could have obtained witness statements from neighbors or other witnesses. He has not identified any witness statement that was exculpatory but was not produced by the prosecution. Petitioner's claim should be denied.

**5**. **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A.     Failure to provide defense or fully investigate

Petitioner claims his counsel was ineffective for failing to request DNA evidence, copies of the complainant's calls to police, transcripts of grand jury testimony, a psychological profile of Petitioner, and lie detector and drug tests of the state's witnesses.

Petitioner, however, has failed to show that any of this evidence would have been helpful to the defense. He also does not state how his counsel could have compelled the state's witnesses to take drug or lie detector tests. Plaintiff's claims are conclusory and should be denied.

### B.     Witnesses

Petitioner claims his counsel was ineffective for failing to call neighbors and other potential witnesses. Petitioner, however, has failed to show that any witness would have been willing to testify at trial and would have testified favorably to the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony

will not justify the issuance of a writ . . . .").

Petitioner also claims his counsel did not object to the state's witnesses, even though these witnesses were not disclosed in discovery. Petitioner has failed to show any unlawful surprise witnesses. Under Texas law, the state is not required to provide the defense with a list of fact witnesses absent a court order. TEX. CODE CRIM. Proc. 39.14. The record reflects no court order regarding witness lists. Additionally, the record does not reflect that defense counsel was surprised by the witnesses. This claim should be denied.

### C.     Cross-Examination

Petitioner argues his counsel failed to sufficiently cross-examine the state's witnesses. He states counsel failed to show that the complainant's letters were evidence of a motive to lie about him. Counsel, however, cross-examined the complainant extensively regarding her letters to Petitioner. (Trial Tr. Vol. 5 at 68-75;Vol. 6 at 19-29.) He also cross-examined her about her version of the assault. (Trial Tr. Vol. 5 at 74-82.)

Petitioner also claims his counsel should have obtained video from a Wal-Mart parking lot to show that complainant parked next to his car, and therefore was not afraid of him. The complainant, however, testified at trial that she did park next to Petitioner at Wal-Mart, but was unaware of that fact until she returned to her car to drive out of the parking lot. (Trial Tr. Vol. 5 at 61.)

Petitioner alleges his counsel failed to sufficiently cross-examine witness Fagg about her drug use. The record shows, however, that Fagg admitted on cross-examination that if tested for drugs, she would test positive for marijuana. (Trial Tr. Vol. 6 at 78.) This claim is without merit and should be denied.

### D.     Probation

Petitioner argues his counsel was ineffective because he did not know that Petitioner was ineligible for probation. Petitioner states his counsel advised him to waive a jury trial because counsel believed a jury could not sentence Petitioner to probation, but a judge could. Relying on this advice, Petitioner states he waived a jury trial.

The record appears to show that counsel mistakenly believed Petitioner was probation-eligible. After Petitioner was found guilty, defense counsel argued during the sentencing phase that Petitioner should be sentenced to probation. Petitioner, however, was ineligible for probation because of his prior felony convictions. Due to the seven enhancement paragraphs, Petitioner's punishment range was twenty-five to ninety-years in prison. TEX. PENAL CODE Ann. § 12.42(d). Under Texas law, neither a judge nor a jury can sentence a defendant to probation if a prison term of more than ten years is assessed. TEX. CODE CRIM. PROC. Ann. Art. 42.12 §§ 3(e)(1), 12.42(d)(1) (2005).

Although Petitioner's counsel may have been deficient, Petitioner has failed to show he suffered the required prejudice. Petitioner was ineligible for probation by either a judge or a jury. Therefore, if he had not waived a jury trial, he still could not have been sentenced to probation. He has failed to show there is a reasonable probability that but for his attorney's advice to waive a jury and be tried by a judge, the result of trial would have been different.

Importantly, the Court finds that Petitioner's original petition did not include the claim that counsel's advice caused Petitioner to proceed to trial rather than accept a plea offer. Petitioner's original petition does not include any claim regarding his decision to plead not guilty, rather it raises the claim that counsel advised Petitioner to waive a jury trial.

On April 10, 2012, Petitioner filed additional briefing per the Court's order. This briefing raised the claim that defense counsel was ineffective in advising Petitioner on how to plead because counsel did not know or understand the sentencing statutes. After considering the arguments and the record, the Court determines that Petitioner did not raise this claim in his original petition, or in the state courts, the claim is therefore unexhausted and procedurally barred.

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302. This requires that the state court be given a fair opportunity to pass on the claim, which in turn requires that the applicant present his claim in a procedurally proper manner according to the rules of the state courts. *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). In this case, Petitioner failed to raise this claim in state court.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750). Petitioner has not shown any cause for his failure to present this claim to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice.

This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).  Petitioner has failed to show he is actually innocent.  Petitioner has not overcome the state procedural bar on this claim.

**6. Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest.  Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 1ST day of June, 2012.

_____
**PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**        Page -14-